GUIDRY, Judge.
This is a suit by a partnership known as LaCroix, Waring and Derbonne against a former partner, Richard R. Anderson, Sr., to enforce the terms of a partnership agreement claimed to have been entered into by Mr. Anderson.
Mr. Anderson became associated with the accounting firm of LaCroix, Waring and Derbonne in 1976 and became a partner in 1979. By July of 1980, the two senior partners, Mr. LaCroix, Sr., and Albert Waring, had retired, leaving Anderson, Roy Derbonne and Douglas LaCroix as the remaining partners in the firm. On October 1, 1980, Marvin Easley became a partner of the firm and, on January 1, 1981, Linda Brinkerhoff and Bob Lester became partners.
During the months of December 1980 and January 1981, the partners discussed drawing up a partnership agreement. The firm had operated without a written agreement since its inception.
A written agreement was drafted and signed by- five of the six partners in February 1981. Easley was out of town on the date of the signing. The agreement was left on Easley’s desk to sign, however, he never signed it. Partners, Derbonne, La- *1189 Croix and Brinkerhoff, did not learn of Easley's failure to sign until mid-April.
On April 21,1981, the defendant, Richard Anderson, advised Roy Derbonne that he, Marvin Easley and Bob Lester were leaving the firm and that they planned to practice together. Lester, Easley and the defendant withdrew from the partnership on May 7, 1981.
On May 9,1981, defendant removed from the firm office the files of clients which he was to continue to serve. The amount of the accounts receivable then owed by these clients and ultimately collected by Anderson was approximately equal to his capital account balance in the partnership. Subsequent to the withdrawal of the three partners, a number of meetings took place between the former and remaining partners in an effort to work out an equitable arrangement. In connection with these meetings, the defendant agreed to pay $350.00 a month toward the partnership obligation of approximately $1,200.00 a month owed to Albert Waring as retirement benefits. The defendant began paying Mr. Waring in July 1981.
The efforts to seek a financial settlement between the defendant and the partnership were unsuccessful. Consequently, the partnership sought to enforce the provisions of the partnership agreement against the defendant.
The partnership agreement, which the defendant Anderson signed, contained the following provision regarding a partner’s withdrawal:
“7-8. Withdrawal of Partner but No Retirement. If a partner withdraws from the partnership but intends to and does continue the practice of public accounting, either individually or in some arrangement other than as a part of this partnership, it is recognized that such withdrawing partner may take with him certain clients of the partnership for whose business the withdrawing partner shall compensate the remaining active partners. For purposes of determining the business value of each client of the partnership, the partners signatory hereto, or hereinafter, agree that the valuation of such client shall be the higher of 37 per cent of the preceding thirty-six (36) months’ billings or the total billings of the past twelve months.
If the withdrawing partner performs any accounting services including employment to any of the partnership’s current clients or clients served within the past three years within a twenty-four month period following his date of withdrawal, the withdrawing partner shall be obligated to pay his former partners in the aggregate, the value of each client for whom the withdrawing partner performs services or enters into an agreement to perform services within such twenty-four month period.
The withdrawing partner shall be entitled to his interest in the partnership as detailed in Article VII, Section 7-5. The amount due the partnership, as detailed above, for clients retained by the withdrawing partner will be offset against the amount due him under Article VII, Section 7-5. The difference will be payable six (6) months after withdrawal and each six (6) months thereafter until paid in full.
An accounting shall be provided by the withdrawing partner to his former partners and his records shall be available for inspection in the event any inquiry is made as to whether the withdrawing partner has performed any accounting services or has entered into an agreement to perform any accounting services for any of the clients who were formerly clients of the partnership.”
The matter was tried to a jury which determined that the defendant was obligated under the terms of the partnership agreement and that he owed the partnership $73,000.00. Judgment was rendered and signed in accord with the jury verdict. Defendant filed motions for a new trial and for judgment notwithstanding the verdict which were denied by the trial judge. Defendant appeals urging the following assignments of error:
*1190 1. The trial court erred in allowing the partnership agreement to be introduced into evidence before the jury, to make reference to the partnership agreement before the jury, and in instructing the jury that they could not find that the defendant could avoid the effect of the partnership agreement solely because Marvin Easley did not sign it.
2. The trial court erred by not offsetting the amount paid or to be paid on the Waring retirement against any liability of the defendant, and, likewise, the trial judge erred in failing to grant a motion for judgment notwithstanding the verdict whereby the Waring retirement payments made by the defendant would offset any of his liability.
SPECIFICATION OF ERROR NO. 1
The trial judge instructed the jury as follows:
“The law contemplates that generally people are bound by their agreements. In this case, contracts or agreements can be oral as well as written.
You may choose to believe or disbelieve that the purported partnership agreement is, or was, the contract between the parties.
You may find that the defendant, Richard Anderson, is bound or not bound in any way, by the purported partnership contract. However, I do instruct you as a matter of law, that he cannot avoid his obligation under the contract solely because Marvin Easley did not sign it.
You may choose to believe or disbelieve that the defendant, Richard Anderson, is not bound by all the terms of the contract if you find that there was a subsequent or later agreement between Richard Anderson and the plaintiffs in which they allowed Richard Anderson to withdraw from the partnership without being bound by all of the terms of the proported (sic) partnership contract.
If you find that the defendant, Richard Anderson, is bound by any terms of any contract or agreement, then you must determine whether or not he owes the partnership of the plaintiffs any money, and if so, how much.”
We find no error in the trial court’s admission of the partnership agreement in evidence. Defendant is shown to have executed the agreement freely and voluntarily in February of 1981 and the relevance of this document to the issues to be determined by the jury cannot be questioned. As we appreciate this specification of error, defendant’s principal contention is that the trial court committed prejudicial error when the jury was instructed that defendant could not avoid the contract “solely because Marvin Easley did not sign it.”
In support of this conclusion, defendant urges that the failure of Easley to sign the partnership agreement rendered the agreement ineffective because the element of “consent” necessary to the formulation of a contract was missing. Specifically, defendant posits that Easley’s failure to sign the agreement was indicative of the lack of consent on the part of Easley and in turn tainted the consent of the signatories to the document for they were under the mistaken impression that Easley would sign the document.
The record reveals that Easley had some reservations about the agreement from the beginning. In particular, Easley was concerned with the withdrawal provision’s applicability to him since he had brought his own clients to the firm and felt that if he left the firm he would not be taking away the firm’s clients.[1] Easley testified that he procrastinated in signing the agreement because of the withdrawal provision. He added, though, that he felt it was assumed the partnership was operating under the terms of the written agreement during the months preceding his withdrawal. Defendant was fully aware of Easley’s reservations from the outset and certainly at the *1191 time he signed the agreement in February of 1981.
The other partners, including the defendant, did not question any of the terms of the agreement while negotiations were in progress. The defendant took no action to indicate an intention not to be bound by the terms of the document unless Easley also executed the agreement. Defendant did not question the binding effect of this agreement until he elected to withdraw from the partnership in April of 1981.
We observe that the validity of the agreement by its terms is not made contingent upon the signature of all the partners. To the contrary, the agreement sets forth in Section 13-2 that “each person executing this agreement and all amendments or supplements to it, binds and obligates himself, his spouse, his estate, and all persons claiming by, through, or under him.”
Civil Code Article 1816[2] provides in pertinent part as follows:
“Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract ...”
Civil Code Article 1817 provides in part as follows:
“Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation;
A partnership agreement is not required to be in writing except for a partnership in commendam and for immovable property to be owned by the partnership. La.C.C. Arts. 2806, 2841.
In Segura v. Louisiana Architects Selection Board, 340 So.2d 369 (La.App. 1st Cir.1976), writ denied, 342 So.2d 676 (La.1977), the court stated:
“[I]f the facts of the case reveal that the parties did not intend to be bound until the execution of a written document, no contract can exist until that event takes place. However, even when a written document is contemplated, if the parties intend to be bound by their original verbal agreement, then a contract subsists from that time, and the writing, if executed is a memorial of that agreement.” (Cites omitted)
In light of the above, we conclude that, under the particular facts and circumstances present in this case, the trial court did not err in instructing the jury that defendant could not avoid his obligations under the contract “solely because Marvin Easley did not sign it”.
SPECIFICATION OF ERROR NO. 2
The jury rendered a general verdict awarding plaintiff the sum of $73,000.00 as the amount due the partnership by defendant, the withdrawing partner. Although at the trial level plaintiff contended that defendant’s indebtedness exceeded this amount, plaintiff did not appeal nor answer the appeal and cannot now question the adequacy of this sum. On appeal, defendant does not question the total award but argues that the jury erred in not offsetting the award of $73,000.00 by the amount of the liability he assumed, as his percentage contribution to Albert Waring’s retirement benefits. In opposing this contention, ap-pellee posits that the jury considered the defendant’s obligation to Albert Waring in reaching its verdict and that the award constitutes the jury’s determination of appellant’s obligation to the partnership less his obligation to Albert Waring. For the reasons which follow, we find appellant’s contention meritorious.
Defendant’s answer alleged no facts which would entitle him to a setoff. Setoffs should be specifically pleaded and proven by the defendant. La.C.C.P. Art. 1005; National American Bank of New Orleans v. Purvis, 407 So.2d 754 (La.App. 1st Cir.1981). However, the pleadings were enlarged to include the affirmative *1192 defense of setoff by the introduction of evidence supporting this defense without objection. See Edwards v. Edwards, 282 So.2d 858 (La.App. 1st Cir.1973), writ refused, 284 So.2d 777 (La.1973).
Clearly, the retirement payments owed to Albert Waring are an obligation of the partnership. The partnership is primarily liable for that debt. La.C.C. Art. 2817.
There is no merit to plaintiffs contention that the jury considered the defendant’s obligation to Albert Waring in reaching its verdict and that the award constitutes the jury’s determination of appellant’s net obligation to the partnership. The jury did not render its verdict on special interrogatories. Therefore, when the jury determined that defendant was indebted to the partnership in the sum of $73,000.00 it must be assumed that this amount constituted the jury’s determination of defendant’s total indebtedness to the partnership. Inasmuch as the retirement payments owed to Waring are an obligation of the partnership and defendant is not individually liable therefor, the defendant is entitled to offset whatever amount he has contributed in that regard from the total award due to the plaintiff.
Accordingly, the judgment of the trial court is amended in part to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the defendant, Richard R. Anderson, Sr., is hereby condemned to pay the plaintiff, LaCroix, Waring & Derbonne, a partnership, the sum of SEVENTY-THREE THOUSAND ($73,000.00) DOLLARS, together with legal interest at the rate of twelve (12%) percent per annum from judicial demand until paid, less the total amount the defendant has contributed to the payment of Albert Waring’s retirement benefits.
In all other respects, the judgment appealed from is affirmed. Costs of this appeal are taxed one-half (V2) to appellee and one-half (V2) to appellant.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.

. Mr. Easley's practice was very specialized; it dealt with cost reimbursement for hospitals and home health services. No other member of the firm had the expertise to handle the clients he served.

. Civil Code Article 2802 provides:
“The contract of partnership is governed by the provisions in the Title: Of Conventional Obligations, in all matters that are not otherwise provided for by this Title.”